The document below is hereby signed.

Signed: June 21, 2013



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                          )
                               )
KEITH J. SMITH and LATONYA     )   Case No. 11-00481
A. SMITH,                      )   (Chapter 7)
                               )
          Debtors.             )
_____)
                               )
NYEPLU L. KPODI and DOE F.     )
KPODI,                         )
                               )
          Plaintiffs,          )
                               )   Adversary Proceeding No.
     v.                        )   11-10040
                               )
KEITH J. SMITH,                )   Not for Publication in
                               )   West's Bankruptcy Reporter
          Defendant.           )
```

MEMORANDUM DECISION RE MOTION TO VACATE DEFAULT JUDGMENT

Exactly one year after the default judgment was entered against him, the defendant Smith has filed a motion to vacate the default judgment. The motion will be denied.

I

On September 21, 2011, the plaintiffs filed a complaint to have a debt owed to them by Smith declared nondischargeable under 11 U.S.C. § 523(a)(2) & (4). The summons was issued on September

22, 2011.  Thus, pursuant to Fed. R. Bankr. P. 7012, Smith's answer was due by October 24, 2011.  No answer was timely filed.  On November 22, 2011, however, Smith appeared through counsel at a scheduling conference.  At the scheduling conference, Smith's attorney agreed to entry of an order setting December 22, 2011, as the new deadline for filing an answer or motion responding to the complaint (meaning a motion under Rule 12 of the Federal Rules of Civil Procedure).  No answer or motion was filed by December 22, 2011, and on January 3, 2012, the plaintiffs filed an application for entry of default.  On January 20, 2012--after the application for entry of default was filed--Smith filed a bare-bones answer, and with two insignificant exceptions, merely denied the allegations of the complaint.  In his motion to vacate the default judgment, Smith explains that the failure timely to file an answer by the December 22, 2011 deadline was the result of a miscommunication between Smith and his attorney.  Smith did not file an opposition to the application for entry of default.

    On January 23, 2012, the court issued a memorandum decision and order (Dkt. No. 10) instructing the clerk to enter the default notwithstanding that an untimely answer was now on file.  The court's decision explained that the entry of a default under Rule 55(a) is a ministerial act, and that the lack of a timely filed answer triggered the clerk's non-discretionary obligation to enter the default requested by the plaintiffs.  The court

further explained, however, that unlike the clerk, the court has the discretion to set aside a default, and that "[t]he proper vehicle for addressing whether the default should stand is a motion under Fed. R. Civ. P. 55(c) to set aside the entry of default for good cause."

The clerk acted on the Application for Entry of Default that same day, January 23, 2012, by entering a default against Smith. Smith's counsel received electronic notice of the default upon its entry, and a copy of the default was mailed to Smith on January 25, 2012. Despite the clear notice given with respect to the appropriate procedure for setting aside a default, Smith never filed a Rule 55(c) motion.

On February 3, 2012 (eleven days after the default was entered) the plaintiffs filed a motion for default judgment, with notice of a deadline of February 24, 2012, for an opposition to be filed. No timely opposition was filed. On March 20, 2012, several weeks after the deadline for opposing the motion for default judgment had passed, Smith suffered a heart attack. On April 2, 2012, the court granted the motion for default judgment and entered a default judgment decreeing that the debt owed by Smith to the plaintiffs pursuant to the March 17, 2009 Judgment of the Superior Court of the District of Columbia in the amount of $32,181.80, with interest, is nondischargeable.

Smith alleges that his March 20, 2012 heart attack caused

3

him to suffer short and long term memory loss.  As part of his recovery, he underwent open heart surgery on September 5, 2012, and the use of a heart and lung machine during that surgery caused Smith to suffer memory loss.  Smith contends that had he not suffered this heart attack he would have filed a motion to vacate sooner.[1]  Smith offers no explanation for why he did not file an opposition to the application for entry of default, why he did not file a Rule 55(c) motion to vacate the entry of default, or why he failed timely to file an opposition to the motion for entry of default judgment.

II

In this circuit, courts apply a stricter standard when evaluating a motion to vacate a default judgment than they apply when deciding a motion to vacate an entry of default.  *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980); *Capital Yacht Club v. Vessel AVIVA*, 228 F.R.D. 389, 393-94 (D.D.C. 2005) ("unlike some courts which apply the same standard to vacatur of default and vacatur of default judgment, . . . in this circuit courts grant vacatur of default more freely than vacatur of default judgment. . . .") (citing *Jackson*, 636 F.2d at 835).  Whereas "[a] default can be set aside under Rule 55(c) for 'good cause shown,' . . . a default that has become final as a judgment can be set aside only under the stricter Rule 60(b) standards for setting aside final,

---

[1]  Smith's motion is not supported by an affidavit.

4

Case 11-10040 Doc 22 Filed 06/21/13 Entered 06/21/13 14:56:57 Desc Main
Document Page 5 of 17

appealable orders." *Jackson*, 636 F.2d at 835.[2]  "[T]he decision whether a default judgment should be set aside is one committed to the sound discretion of the trial court." *Id.*[3]

A.

Smith's Motion is Not *Per-Se* Untimely Under Rule 60(c)

Rule 60(b) of the Federal Rules of Civil Procedure, as made applicable to these proceedings by Fed. R. Bankr. P. 9024, provides, in relevant part:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> ....
> (6) any other reason that justifies relief.

---

[2] Smith's motion was not filed within 14 days after entry of the default judgment, and, accordingly, was not a motion under Fed. R. Civ. P. 59 made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9023.  So the motion was one under Fed. R. Civ. P. 60, made applicable by Fed. R. Bankr. P. 9024.

[3] The court's January 23, 2012 memorandum decision and order regarding the plaintiffs' application for entry of default, entered after Smith filed his answer but before the clerk had acted on the plaintiffs' application for entry of default, states that "[t]he proper vehicle for addressing whether the default should stand is a motion under Fed. R. Civ. P. 55(c) to set aside the entry of default for good cause."  Once the actual judgment was entered on April 2, 2012, however, any attempt by Smith to have the judgment set aside became subject to the standard set forth in Rule 60(b) (or the standards of Rule 59 if the motion to vacate had been filed within 14 days after entry of the default judgment).

Rule 60(c), which governs the time limits for filing such a motion, provides that:

> [a] motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Smith's motion to vacate under Rule 60(b) was filed exactly one year after entry of the default judgment. Thus, it is not *per se* untimely under Rule 60(c), which provides that motions under Rule 60(b)(1) based upon excusable neglect must be filed within a year after entry of the judgment.[4] Nevertheless, Smith's motion is also subject to the requirement that such motions must be "made within a reasonable time." It is unnecessary to decide whether the motion was made within a

---

[4] To the extent Smith's motion could be construed as a motion under Rule 60(b)(6) seeking to vacate the default judgment based upon "any other reason that justifies relief," (as opposed to relying on the excusable neglect standard of *Pioneer Ins. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380 (1993), under Rule 60(b)(1)), the motion is denied. Under this catchall provision, Smith would be required to "show 'extraordinary circumstances' suggesting that [he] is faultless in the delay" *In re Subramanian*, 2006 WL 1645018, at *12 (D.N.J. June 14, 2006) (quoting *Pioneer*, 507 U.S. at 393). *See also Lehman v. U.S.*, 154 F.3d 1010, 1017 (9th Cir. 1998) ("Neglect or lack of diligence is not to be remedied through Rule 60(b)(6)."). Smith having altogether failed to explain why he did not respond to the application for entry of default, why he did not file a Rule 55(c) motion, or why he failed timely to respond to the motion for default judgment, he cannot make the showing required under this provision. The fact that Smith's March 20, 2012 heart attack may explain Smith's failure more promptly to file a motion to vacate the default judgment does not mitigate his earlier unexplained and unexcused failure to participate in these proceedings.

reasonable time.  Even if the year-long delay following the entry of the default judgment was not, itself, unreasonable, there was unexplained and unexcused delay on Smith's part prior to the entry of the default judgment that warrants a denial of the motion to vacate.  He has not shown excusable neglect in failing to oppose the entry of the default judgment.

B.

> Smith has failed to explain his failure timely to address the entry of the default and his failure timely to oppose the motion for entry of default judgment.

On January 23, 2012, the court issued a memorandum decision giving Smith clear guidance on the appropriate procedure for seeking relief from the default, to wit, the court indicated that a Rule 55(c) motion to set aside the default for good cause would be required.  The filing of a motion to set aside a default under Rule 55(c) must be made "promptly upon the discovery of the default."  Alan Wright, Arthur R. Miller, 10A Federal Practice & Procedure § 2698 (3d Ed., updated April 2013).  *See also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249 (4th Cir. 1967) (waiting two and a half months to move to set aside default was delay warranting denial of motion to set aside default).  Smith has not offered an explanation for his failure

7

to file such a motion.[5]

    Likewise, Smith failed timely to oppose the plaintiffs' motion for entry of default judgment.  The motion for default

---

[5] Smith's motion to vacate urges the court not to allow an inadvertent miscommunication between the debtor and his attorney to result in a default against the debtor.  The miscommunication described by Smith in his motion relates to Smith's failure timely to file an answer.  The court agrees that a defendant's failure timely to file an answer is generally the type of mistake a litigant ought to have an opportunity to cure.  The problem here is that Smith was given such an opportunity, and he failed to take advantage of it.  The court's January 23, 2012 memorandum decision and order regarding the plaintiffs' application for entry of default was very clear that if Smith wanted to have the default set aside, he was to file a motion under Rule 55(c) showing good cause for the court to do so.  Likewise, Smith could have filed a timely response to the motion for default judgment, and instead he did nothing.  Smith's heart attack, and the subsequent short and long term memory loss he attributes to that event, did not occur until March 20, 2012, almost two months after the court indicated that a Rule 55(c) motion was required if Smith wanted the default set aside, and almost one month after the deadline for opposing the motion for default judgment had expired.  Had Smith timely sought relief under Rule 55(c) or timely opposed the motion for entry of default judgment, the court might have been inclined to set aside the default under Rule 55(c) based upon good cause shown.  Rather than responding to the entry of a default against him with a sense of urgency, or at least with relative promptness, Smith sat back for almost two months and took no action whatsoever to have the default vacated.

    It is not Smith's failure timely to file an answer that the court finds most troubling, or even the year-long post-judgment delay (for which Smith purports to have an explanation), but rather, it is his failure promptly after the filing of the answer fully to engage in these proceedings in a manner consistent with a litigant who intends to defend against the complaint.  *See Bowles v. Branick*, 66 F. Supp. 557, 558 (W.D. Mo. 1946) (motion to vacate default judgment denied where defendant had colorable claim of excusable neglect as concerned her failure to respond to notice that was issued just prior to default, but who failed to offer a reason for her previous failure to defend against the complaint).

judgment was filed on February 3, 2012. Although the court did not enter the default judgment until April 2, 2012, approximately two weeks after Smith suffered a heart attack (which event Smith relies upon as an excuse for his delay) objections were due by February 24, 2012, almost a month prior to the heart attack Smith points to as an excuse for his various delays.  Smith's heart attack and any related memory loss resulting from his medical condition may, at least in part, explain Smith's failure more promptly to file a Rule 60(b) motion to vacate the default judgment,[6] but it does not address the question of why Smith did not seek to have the entry of default vacated pursuant to a Rule

---

[6] If the court were to conclude that Smith's pre- heart attack filing failures were due to excusable neglect, it would still be necessary to evaluate the reasonableness of the year-long post-judgment delay in the filing of the motion to vacate the default judgment.

Illness can serve as a basis for vacating a default judgment. *See Ken-Mar Airpark, Inc. v. Toth Aircraft & Accessories Co.*, 12 F.R.D. 399 (W.D. Mo. 1952) (default judgment would be vacated where defendant's failure to appear was due to illness and court concluded that defendant had not been given written notice of the impending default judgment); *Rooks v. Am. Brass Co.*, 263 F.2d 166 (6th Cir. 1959) (finding that the District Court improperly denied motion to vacate default judgment where defendant's default was attributable, as established by verified affidavits, mainly to the defendant's "precarious illness"). Smith has not attached an affidavit to his motion in support of his claimed memory loss, or otherwise offered evidence on this point. To show that the post-judgment delay of one year was reasonable, Smith would be required to make an evidentiary showing to substantiate his claim that his medical condition is to blame for his delay, and the plaintiffs would be entitled to present evidence and argument to challenge that assertion.

55 motion prior to the entry of the default judgment,[7] or why he failed timely to file an opposition to the motion for default judgment.

Smith has offered no argument or evidence to suggest that the failure timely to challenge the entry of the default after it was entered, or timely to oppose the motion for default judgment, was anything other than ordinary neglect.  *See United States v. OUL Located at Mansiones del Caribe*, 2010 WL 419439 (D.P.R. Jan. 29, 2010) (default decree of forfeiture would stand where failure to respond to motion for default judgment to prevent default was not attributable to excusable neglect); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 483 (D. Conn. 1993) (neglect not excusable where defendant, who was aware of pendency of action, failed to defend notwithstanding court order explicitly warning defendant of possibility of entry of default judgment should he fail to comply with deadlines).

C.

Smith has failed to demonstrate that the default judgment ought to be vacated under Rule 60(b)(1) due to excusable neglect.

Pursuant to Rule 60(b)(1), the court can grant relief from a final judgment, order, or proceeding, that is the result of a party's "mistake, inadvertence, surprise, or excusable neglect .

---

[7] Or, for that matter, why he did not include with his answer an opposition to the application for entry of default.

. . ." The Supreme Court addressed the meaning of "excusable neglect" in *Pioneer Ins. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380 (1993). In evaluating whether neglect is excusable under *Pioneer*, the factors courts consider include: "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* at 395; *See also In re Vitamins Antitrust Class Actions,* 327 F.3d 1207 (D.C. Cir. 2003)(adopting the *Pioneer* analysis in the D.C. Circuit). "Excusable neglect is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996).

> (1) Vacating the default judgment will prejudice the plaintiffs by further delaying their ability to execute on the judgment.

The judgment the plaintiffs seek to collect upon is now more than four years old. Although litigants do not have an inherent right expeditiously to execute on a judgment, especially when intervening questions of legal entitlement arise, the plaintiffs are entitled, at some point, to have finality on the question of whether they can permissibly execute on their judgment. Reopening this proceeding imposes yet another layer of delay on the plaintiffs, who have now been waiting more than four years to

recover.[8]

    (2)   The year-long post-judgment delay will not substantially impact these proceedings.

Although a delay of one year is substantial, the court does not think that the length of the delay would have a substantial impact on these judicial proceedings. *See Amick v. Ohio Dept. Of Rehabilitation & Corrections*, 2011 WL 4055246, at *3 (S.D. Ohio Sept. 8, 2011) (excusable neglect standard not satisfied where there was a year-long delay in the filing of an answer and crossclaim, which delay the court found to be both lengthy and prejudicial to opposing party).[9] Courts do not always find a delay of this magnitude to be prejudicial. *See U.S. v. Maricle*,

---

    [8]   In their response to the motion to vacate, the plaintiffs discuss how the reopening of these proceedings threatens to frustrate their effort to recover from the D.C. Bar Client Security Fund. According to the plaintiffs, the "Fund usually reviews then makes a decision on each claim within the average time of three to six months. It's been almost two years since we've submitted our claim application and recently we've received correspondence that our application is being reviewed." The court lacks sufficient familiarity with the mechanics of the Fund to understand the implications of a delay at this juncture on the plaintiffs' right or ability to recover from the Fund.

    [9] Here, Smith states that he has suffered both short and long-term memory loss, a fact that would presumably compromise his ability to be deposed or cross-examined if this matter were to be re-opened and decided on the merits. Smith's alleged memory loss is not due to the passage of time, and the precipitating factor--the heart attack--would presumably have happened even if he had successfully had the default set aside pursuant to a timely filed Rule 55(c) motion. As a practical matter, Smith's reliability as a witness is now compromised, but it would be improper to hold this against Smith in evaluating the merits of his Rule 60(b)(1) motion under *Pioneer*.

2010 WL 3927570 (E.D. Ky. Oct. 4, 2010, at *3 (retrial less than a year after original trial, in which the witnesses had originally testified regarding events that had occurred several years prior, would not necessarily be prejudicial to prosecution); *AGF Marine Aviation & Transport v. Cassin*, 2007 WL 309948 (D.V.I. Jan. 22, 2007) (court found two-year delay "extremely troubling," but also found that it did not prejudice the other party or substantially impact the judicial proceedings).

The underlying claim with respect to which the plaintiffs seek a determination of non-dischargeability is based upon a monetary judgment issued by the Probate Division of the Superior Court of the District of Columbia.  The factual basis for the probate court's judgment is set forth in detail in an Auditor Master's Report, which the plaintiffs have attached to their complaint.  And while the passage of time always poses a risk that witness memories will fade or evidence will become unavailable, the preexisting record with respect to the plaintiffs' claims in this case mitigate those concerns.

>    (3)   The failure to defend against the entry of default or
>          timely to oppose the motion for default judgment were
>          reasonably within Smith's control.

Smith's failure timely to oppose the plaintiffs' request for entry of default, failure to seek to have the default set aside, and failure timely to respond to the motion for default judgment

are all failures that were reasonably within Smith's control, and even if the prejudice to the plaintiffs in reopening these proceedings is minimal, that does not excuse Smith's failure to defend against the complaint. *See Rahman v. Taylor*, 2012 WL 1536213 (D.N.J. April 30, 2012) (failure to meet deadline was within litigant's control and court found that the litigant had thus failed to satisfy the excusable neglect standard articulated in *Pioneer*); *S.E.C. v. McNulty*, 137 F.3d 732 (2d Cir. 1998) ("An absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment.").

> (4)  Smith has not shown that he was acting in good faith when he failed to oppose the entry of default, failed to seek to have the default vacated, or when he failed timely to oppose the motion for default judgment.

The question of whether Smith was acting in good faith is difficult for the court to address because Smith has offered no explanation for his failure to engage in these proceedings during the critical weeks leading up to the entry of the default judgment.  The court has no reason to doubt that a good-faith mistake led to Smith's failure timely to file an answer,[10] but having offered no explanation for his subsequent failure to have

---

[10]  The court here refers to the December 22, 2011 answer deadline established at the November 22, 2011 scheduling conference.  It is worth noting that the December 22, 2011 deadline was not the original answer deadline.  The original answer deadline was October 24, 2011, and Smith also missed that deadline.

14

the default set aside or why he did not timely respond to the motion for entry of default judgment, the court can only assume that those delays are attributable to a lack of diligence.  As for the delay that followed Smith's heart attack, the court will give Smith the benefit of the doubt and assume, without deciding, that Smith did, as he states, experience memory loss, and that such memory loss contributed to the delay in seeking to vacate the default judgment.  That excuse, however, does not help Smith when it comes to his other unexplained filing failures.

> (5) Smith has made no attempt to show the existence of a meritorious defense.

The *Pioneer* factors are a non-exclusive list, and courts in this and other circuits have held that, in addition to the *Pioneer* factors, a party seeking relief on grounds of excusable neglect under Rule 60(b)(1) must, additionally, point to the existence of a meritorious defense.  *See FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835 (D.C. Cir. 2006) (explaining that pre-*Pioneer* case law generally required the showing of a meritorious defense, that the *Pioneer* factors are a non-exclusive list, and making this a precondition for Rule 60(b) relief helps advance judicial economy to ensure that vacating the judgment will not be a futile gesture); *Murray v. District of Columbia*, 52 F.3d 353 (D.C. Cir. 1995) (post-Pioneer case holding that showing the existence of a meritorious defense is required to have judgment vacated).  *See also Fed. Enters. v.*

*Frank Allbritten Motors*, 16 F.R.D. 109, 112 (W.D. Mo. 1954) (pre-*Pioneer* case) ("generally, it is an abuse of discretion to vacate a default judgment unless the person against whom it is rendered makes some reasonable showing that he has a meritorious defense.").

Smith's answer merely recites whether he admits or denies the allegations, making it impossible for the court to assess what, if any, meritorious challenges Smith might assert against the complaint.  Nowhere in Smith's motion to vacate does he describe or even mention his defense.  "A meritorious defense need not, beyond a doubt, succeed in defeating a default judgment, but it must at least 'raise[] a serious question regarding the propriety of a default judgment and . . . [be] supported by a developed legal and factual basis.'" *Wehrs v. Wells*, 688 F.3d 886 (7th Cir. 2012) (quoting *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994).  A defendant must offer more than conclusory denials to show the existence of a meritorious defense.  *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (conclusory denials insufficient to show existence of meritorious defense); *Breuer Elec. Mfg. Co. v. Tornado Sys. of Am., Inc.*, 687 F.2d 182 (7th Cir. 1982) ("The showing of a meritorious defense that is necessary to set aside a default requires more than . . . bare legal conclusions . . . .").  Smith's answer offers no insight into the legal or factual basis of his defense, and his

16

motion to vacate the default judgment is silent on the issue. Smith has failed to make any showing with respect to this factor, another reason why the court, in the exercise of its discretion, finds that Rule 60(b) relief is not warranted.

### III

When weighing the *Pioneer* factors, the court determines that Smith is not entitled to have the default judgment vacated based upon excusable neglect.  The pattern of unexplained delays prior to the entry of the default judgment, despite Smith having been made aware of the pendency of these proceedings, weighs heavily against granting the requested relief.  Likewise, Smith has made no attempt to show the existence of a meritorious defense, without which it would be futile to reopen these proceedings. Thus, in the exercise of its discretion, the court concludes that Smith is not entitled to have the default judgment entered against him vacated.

An order denying the motion to vacate follows.

[Signed and dated above.]

Copies to:
All parties of record; Recipients of e-notification of filing.